**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

ALEXIS SCHOTTENSTEIN, on behalf of
herself and all others similarly situated,

                          *Plaintiff*,

      v.

WAKEFERN FOOD CORP.,

                        *Defendant*.

Case No. 1:25-cv-08635-LAK-HJR

**MEMORANDUM OF LAW**
**IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**
<u>**PLAINTIFF'S CLASS ACTION COMPLAINT**</u>

Blake Hunter Yagman
**SCHONBRUN SEPLOW HARRIS**
**HOFFMAN & ZELDES, LLP**
1330 Ave. of the Americas, Suite 23A
New York, New York 10019
Tel.: (929) 709-1493
*byagman@sshhzlaw.com*

*Attorney for Plaintiff Alexis*
*Schottenstein and the Proposed Class*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES…………………………………………………………………..ii

I.  INTRODUCTION……………………………………………………………………1

II.  FACTUAL AND PROCEDURAL BACKGROUND……………………………...3

    a.  DEFENDANT'S FACIAL RECOGNITION SYSTEM……………………...........3

    b.  DEFENDANT'S PROFIT DRIVEN MOTIVES HARM CONSUMERS…,,,,,,,,,,,6

    c.  THE COMPLAINT AND THE MOTION……………………………….…7

III.  LEGAL STANDARD……………………………………………………………...8

IV.  ARGUMENT……………………………………………………………………....9

    a.  THE COMPLAINT STATES A CLAIM UNDER N.Y. GBL § 349…………...…9

        i.  THE COMPLAINT ALLEGES DEFENDANT OMITTED MATERIAL INFORMATION……………………………………………………..…9

        ii.  THE COMPLAINT ALLEGES COGNIZABLE INJURIES……………13

    b.  THE COMPLAINT STATES A CLAIM UNDER THE BIOMETRIC LAW…...14

        i.  RELEVANT BACKGROUND AND LIMITED HISTORY…………….14

        ii.  THE COMPLAINT STATES A § 22-1202(b) CLAIM……………….....17

    c.  THE COMPLAINT STATES A CLAIM FOR UNJUST ENRICHMENT……...23

V.  PLAINTIFF SHOULD BE GIVEN THE ABILITY TO AMEND HER COMPLAINT………………………………………………………………..25

VI.  CONCLUSION…………………………………………………………………....25

## TABLE OF AUTHORITIES

**CASES**                                                                                                   **Page(s)**

*Agerbrink v. Model Service LLC,*
   155 F.Supp.3d 448, 452 (S.D.N.Y. 2016)…………………………………….. 25

*Anonymous v. CVS Corp.,*
   728 N.Y.S.2d, 333, 339-340 (Sup. Ct. 2001)……………………………………… 2, 13

*Arnold v. Target Corp.,*
   2024 WL 4851573 (N.D. Ill. Nov. 21, 2024)………………………………………… 2

*Ashcroft v. Iqbal,*
   556 U.S. 662, 663 (2009)………………………………………………………...... 9

*Bose v. Interclick, Inc.,*
   2011 WL 4343517, at *9 (S.D.N.Y. Aug. 17, 2011)…………………………...... 14

*Castillo v. Costco Wholesale Corp.,*
   2024 WL 4785136 (W.D. Wa. Nov. 14, 2024)………………………………….... 13

*Cooper v. Mount Sinai Health Systems, Inc.,*
   742 F. Supp. 3d. 383-384 (S.D.N.Y. 2024)………………………………………… 14

*Doe v. FullStory, Inc.,*
   712 F. Supp. 3d 1244, 1259 (N.D. Cal. 2024)……………………………………... 12

*Doe v. GoodRx Holdings, Inc., et al.,*
   2025 WL 229385, at *21-23 (N.D. Cal. July 22, 2025)……………………………. *passim*

*Doe v. Regents of University of California,*
   672 F. Supp. 3d 813, 819 (N.D. Cal. 2023)………………………………………... 12

*Food Parade, Inc. v. Office of Consumer Affairs of City of Nassau,*
   859 N.E.2d 472, 476 (N.Y. 2006)……………………………………………...... 9

*Gross v. Madison Square Garden Ent. Corp.,*
   2024 WL 2055343 (S.D.N.Y. May 7, 2024)…………………………………….. *passim*

*In re Clearview AI, Inc. Consumer Privacy Litigation,*
   2022 WL 252702 (N.D. Ill. Jan. 27, 2022)…………………………………….. *passim*

*In re Meta Pixel Tax Filing Cases,*
   724 F. Supp. 3d at 1004 (N.D Cal. 2024)………………………………………… 12

*Kuklachev v. Gelfman*,
    600 F. Supp. 2d 437, 476 (E.D.N.Y. 2009)………………………………… 9

*Lynch v. City of New York*,
    952 F.3d 67, 75 (2d Cir. 2020)………………………………………….. 9

*Mallouk v. Amazon.com, Inc.*,
    2024 WL 3511015, at *15 (W.D. Wa. July 23, 2024)………………………….. *passim*

*Mayhall v. Amazon Web Services*,
    2022 WL 2718091, at *12 (W.D. Wa. May 24, 2022)……………………….…….. 20

*Melzer v. Johnson & Johnson Consumer Inc.*,
    2023 WL 3098633 (D.N.J. Apr. 26, 2023)…………………………………. 20, 21

*Meyerson v. Prime Realty Services, LLC*,
    796 N.Y.S.2d 848, 856 (N.Y. Sup. Ct. 2005)………………………………… 14

*Nick v. Target Corp.*,
    2:15-cv-04423-LDW, at ECF No. 41, at *12 (E.D.N.Y. Sept. 13, 2017)………. 11, 21

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*,
    85 N.Y.2d 20 (N.Y. Feb. 14, 1995)………………………………………… 11

*Pro Bono Investments, Inc. v. Gerry*,
    2005 WL 2429777, at *8 (S.D.N.Y. Sept. 30, 2005)……………………………. 24

*Suarez v. California Nat. Living, Inc.*,
    2019 WL 1046662, at *7 (S.D.N.Y. Mar. 5, 2019)……………………………… 9

*Travelsavers Enters. v. Analog Analytics, Inc.*,
    149 A.D.3d 1003, 1006 (App. Div. 2nd Apr. 19, 2017)………………………….. 25

*Vance v. Amazon.com, Inc.*,
    534 F. Supp. 3d 1314, 1321 (W.D. Wa. Apr. 14 2021)………………………….. 20

*Yullie v. Uphold HQ Inc.*,
    686 F. Supp. 3d 323, 347 (S.D.N.Y. 2023)………………………………….... 10

**RULES AND STATUTES**

Fed. R. Civ. P. Rule 8(a)(2)……………………………………………………… 8

Fed. R. Civ. P. Rule 12(b)(6)…………………………………………………... 1, 8

Fed. R. Civ. P. Rule 15……………………………………………………………… 25

N.Y.C. Admin. Code § 22-1202(b)…………………………………………………….. *passim*

New York Gen. Bus. Law § 349……………………………………………….….... *passim*

Plaintiff Alexis Schottenstein ("Plaintiff"), on behalf of herself and all similarly situated, respectfully submits this Memorandum of Law in Opposition to Defendant Wakefern Food Corporation ("Wakefern") Fed. R. Civ. P. Rule 12(b)(6) Motion to Dismiss Plaintiff's' Class Action Complaint ("Complaint" or "Compl." [ECF No. 2-1]) ("Motion" or "Mot." [ECF No. 9-1]):

**<u>INTRODUCTION</u>**

Defendant's Motion is based on the premise that this Court lacks the ability to discern two very different cases with completely different theories.  Consistent with this theme, Defendant's Motion spends more time concocting a fictitious narrative that this Action is a rehash of an unrelated, two-year-old case rather than to approach this Action with a tone reflective of the seriousness that Plaintiff's allegations deserve.  Indeed, the Motion opts not to attack Plaintiff's well-pled complaint on the merits, but instead to contort Plaintiff's allegations, conveniently omit citations to proper law, and attack Plaintiff's counsel.  This approach is illustrative of Plaintiff's theory of the case: that Defendant fails to respect consumer privacy with the gravity it requires.[1]

*First,* Count I of the Complaint alleges that Defendant violates New York's deceptive acts and practices statute, New York Gen. Bus. Law § 349 ("N.Y. GBL § 349"), because it omits disclosure about the sharing of Plaintiff and Class members' biometric data.  Compl. ¶¶ 15, 73-78.

Privacy cases around the country, including in the Second Circuit and in the Southern District of New York, have interpreted N.Y. GBL § 349 to afford consumers with such protection.

---

[1] As a threshold issue, this Action is not "the same theory" that the Court relied on in a previously dismissed novel theory in a case of first impression which contested the use of facial recognition on visitors to Madison Square Garden ("MSG") and that the use of that technology was a profit-driven motive to implement a policy banning litigants and attorneys.  Mot., at 1; *see Gross v. Madison Square Garden Ent. Corp.*, 2024 WL 2055343 (S.D.N.Y. May 7, 2024) (Kaplan, J.) ("*Gross*").  Plaintiff does not shy away from this Court's decision in *Gross*; this Court's decision in *Gross*, in tandem with more recent and other comparable biometric privacy cases, actually highlight the differentiations between this Action and *Gross* itself – and illuminates why causes of action articulated in Plaintiff's well-pled complaint should not be dismissed.

1

*See, e.g. Doe v. GoodRx Holdings, Inc., et al.*, 2025 WL 229385, at *21-23 (N.D. Cal., July 22, 2025) (motion to dismiss N.Y. GBL § 349 claim denied, holding "[s]uch sharing of [] information without consent may constitute a deceptive act actionable under the [N.Y. GBL § 349.]") ("*GoodRx Holdings, Inc.*"); *citing Anonymous v. CVS Corp.*, 728 N.Y.S.2d, 333, 339-340 (Sup. Ct. 2001) ("[T]he practice of intentionally declining to give customers notice of an impending transfer of their critical [] information in order to increase the value of that information appears deceptive."). This is not a theory touched in *Gross*.  Indeed, the very first page of Defendant's own Motion highlights this theory as different from that posited in *Gross*.  (Mot. at 1.)

*Second,* Count II of the Complaint alleges Defendant violated the second prong of New York City's Biometric Law (the "Biometric Law") because Defendant profited from the use and transacting of facial recognition in violation of privacy rights.  Compl. ¶ 79-82.

This theory follows established biometric privacy jurisprudence and is exemplified by cases found within the volume of biometric privacy motion to dismiss decisions which Defendant failed to cite.  *See, e.g. In re Clearview AI, Inc. Consumer Privacy Litigation*, 2022 WL 252702 (N.D. Ill. Jan. 27, 2022) (motion to dismiss biometric privacy claim denied where plaintiffs "sufficiently stated a concrete injury-in-fact […] by alleging that Macy's profited from using [facial recognition] to prevent losses and improve customer experience, and that as a result of Macy's use, plaintiffs' biometric information was compromised.") ("*Clearview AI*"); *Arnold v. Target Corp.*, 2024 WL 4851573 (N.D. Ill. Nov. 21, 2024) (motion to dismiss biometric privacy claims denied where "plaintiffs [] claim that Target uses the facial geometry of its patrons to track and detect theft") ("*Target Corp.*").  While this cause of action was also pled in Gross, this not akin to the more hypothetical and nuanced "profit" motivated theory from *Gross* because the violation of the Biometric Law as alleged in this Action stems from the profit-driven collection of

2

highly sensitive facial recognition data to cut costs for consumers, "reduce 'shrinkage' from theft of retail products and cut costs on hiring and training for loss prevention" by "identify[ing] […] repeat shoplifters [and] organized retail theft rings" as well as for "customer identification." Compl. at ¶¶ 2, 3, 36, 85.[2]

*Finally,* Count IV of the Complaint alleges that Defendant was unjustly enriched through the collection of her biometric information for profit, and that by not receiving any payment for this data, the Defendant profited at the victim's expense.  This type of claim has survived a motion to dismiss before under a similar theory, including in cases that Defendant cites in their Motion. *Mallouk v. Amazon.com, Inc.*, 2024 WL 3511015, at *15 (W.D. Wa. July 23, 2024) (denying motion to dismiss unjust enrichment claim).

For the reasons described both above and below, the Court should deny Defendant's Motion as to Counts I, II and IV of the Complaint.[3]

### FACTUAL and PROCEDURAL BACKGROUND

**A.  DEFENDANT'S FACIAL RECOGNITION SYSTEM**

Defendant owns over 200 grocery stores across the country, including its Fairway Market-branded stores in New York City.  Compl. ¶ 2.  In contravention to the essential and fundamental right to privacy, which Plaintiff and Class members do not surrender at the entrance, Defendant deploys facial recognition technology systems at its Fairway Market stores.  *Id.* ¶¶ 1, 2.

Since as late as March 10, 2023, Defendant has used a combination of hardware and software to use facial recognition technology on Plaintiff and Class members: specifically,

---

[2] These profits, unlike *Gross*, are not hypothetical.  For example, as Defendant's facial recognition software provider (FaceFirst) states the returns for sharing facial recognition data equate to "an average of 34% reduction in shrinkage per store."  *Id.,* at ¶ 46.[2]

[3] Plaintiff concedes her third cause of action.

hardware in the form of Defendant's own cameras to collect images of faces which have entered its store and software sold directly to Defendant in the form of FaceFirst's AI-driven facial recognition system to identify consumers that enter its stores. *Id*. ¶ 3, 37, 41, 53. According to Defendant's spokesperson, Defendant deploys FaceFirst, a facial recognition software which used because "[r]etail theft and shoplifting [have] a high rate of repeat offense and drive[] up grocery store costs for all consumers" and " to prevent more crime in store." *Id.* According to FaceFirst, FaceFirst provides a "[r]apid [return on investment]" as well as tangible, pecuniary benefits for Defendant by deploying facial recognition at the behest of consumer privacy, as the use of FaceFirst's software reduces shrinkage in each store by 34%. *Id., at* ¶¶ 38, 46. As the Complaint states, Defendant collects, shares, and uses Plaintiff and Class members' biometric data to (1) reduce shrinkage, (2) cut costs on hiring and training of employees, (3) identify customers, and (4) keep down grocery store costs for consumers. *Id.* ¶¶ 2, 3, 36, 46, 54, 55, 56, 58, 85, 90.

FaceFirst advertises itself as using "artificial intelligence and machine learning" to "create[] safer communities, more secure transactions […] to help retailers […] prevent crime and improve customer engagement while growing revenue," *Id*. ¶ 42. According to FaceFirst, it provides mobile notifications to "designated personnel when persons of interest [] enter [] stores, [providing] real-time, actionable intelligence need[ed] to help keep [] valued customers and associates safe." *Id*. ¶ 38. This software is generally deployed by Defendant's employees through a mobile application downloaded onto a smartphone device. *Id*. ¶ 39.

Plaintiff and Class members had no way of knowing "how [their facial recognition data] was retained, used or shared" and, therefore, had to rely on Defendant's statements about FaceFirst. *Id*. ¶ 59. And, according to Defendant's statements regarding the use of FaceFirst, Defendant deliberately chose not to reveal to the public how FaceFirst's technology works, stating that

4

consumers "should know that all of the video footage collected is regularly erased […] we encourage you to reach out to industry and tech experts on the topic.  We recommend contacting FaceFirst, our technology provider, for more information on how the technology works and is best utilized." *Id.* ¶ 3.  The significance of this is that, while Defendant does not disclose to consumers how the collection, sharing, and use of their biometric data takes place, then deliberately muddies the waters about who consumers should address regarding the specifics and its use of facial recognition while also affirming that it hires FaceFirst for the purpose of sharing facial recognition data in order to identify Plaintiff and Class members when they go to Defendant's stores.[4] *Id.*

Defendant's statement is also notable given the blatant misrepresentation that it "regularly erase[s]" Plaintiff's and Class members data.  This defies logic.  The regular deletion of facial recognition data simply cannot conceivably be true: because without retaining biometric data as well as the identifications that come from it is consistent with Defendant's own statement that the "technology will now allow us the ability to identify repeated offenders, from repeat shoplifters to organized retail theft rings[.]" *Id.* ¶ 3.  This is also inconsistent with FaceFirst's statements about its own technology because it collects biometric data to use machine learning for the enhancement of its own product, stating "as deep learning and neural network powered facial recognition software is supplied more data, it has the ability to improve the software's capacity to tell certain types of facial features apart and make identifications faster." *Id.* ¶ 44.  Indeed, without the ability

---

[4] Defendant concedes this point for purposes of its Motion (Mot., at 2, Fn. 1, Fn. 2.) while also calling its credibility into question by immediately contradicting this concession, stating "[c]ritically, however, the Complaint does not *plausibly* allege that Wakefern sells or otherwise transacts biometric data to any third party."  (Mot. at 4).

This, however, is hardly true.  Plaintiff's Complaint clearly states, "Plaintiff entered into at least one New York City grocery store owned by Defendant, including a "Fairway Markets" location, that collected facial recognition data using FaceFirst's software." (Compl. ¶ 14).

5

to collect and retain biometric data from Plaintiff and Class members, FaceFirst would lose access to valuable training information for its artificial intelligence system, and the profits that flow from its efficiency and accuracy. *Id.* ¶ 37.

At the crossroads of developing artificial intelligence-driven technology and the need to protect consumer privacy, Defendant's business decision to increase profits and cut costs by deploying facial recognition technology systems as well as to mislead the public about its safeguards are the very violations of state and local law which Plaintiff's causes of action were codified to protect.

## B.  DEFENDANT'S PROFIT-DRIVEN MOTIVES HARM CONSUMERS

In addition to the value that facial recognition data provides for businesses like Defendant, this type of data is highly valuable to its subject because it is the sort of personally identifiable information which is "generally immutable and cannot be changed once compromised." Compl. ¶ 26.  The result of this sensitive information, when combined with the actual identification of a subject – as here – has "[t]he potential for increased profits and cost savings [which] serve as an impetus for companies to ensure […] that their actions do not compromise access to this valuable resource." *Id.*  In addition to its value for an organization for increased profits and cost savings, the precise value of each consumer's biometric data is also calculable and compensable to an exact dollar amount because it has tangible resale value on the dark web. *Id*. ¶ 27.

Both the City of New York and the United States Federal Trade Commission ("F.T.C.") have recently highlighted the harm caused by this conduct.  As stated by the New York City Council when passing the Biometric Law, "[t]echnology is rapidly changing, especially when it involves the identification of individuals." *Id*. ¶ 21.  And, as stated by F.T.C.:

> As discussed [..] the collection of biometric information can create a serious risk of
> harm to consumers.  Such harms are not reasonably avoidable by consumers if the

6

collection and use of such information is not clearly and conspicuously disclosed or if access to goods and services is conditioned on providing the information. For instance, if businesses automatically and surreptitiously collect consumers' biometric information as they enter or move through a store, the consumers have no ability to avoid the collect[ion] or use of that [valuable] information.

*Id.* ¶ 29.

To protect against the misuse of this data, including the sharing of it to third parties as well as the potential for it to be compromised, state legislatures and city councils across the country have either enacted or are contemplated biometric privacy statutes. *Id.* ¶ 30.

Further, the deployment of facial recognition software comes with significant civil rights concerns. The ACLU stated that "facial recognition automates discrimination" because it disproportionately harms communities of color and other protected classes. *Id.* ¶ 48. Researchers at MIT and officials within the Trump administration both agree with this, with the latter stating that facial recognition "works best on middle-age white men." *Id.* These concerns about facial recognition also extend to FaceFirst itself, with other retailers located in minority neighborhoods stating that "[FaceFirst] doesn't pick up black people well," even leading to the misidentification of a Black man in Los Angeles which resulted in mistakenly identifying him as a shoplifter. *Id.* ¶¶ 49, 50. At the time, FaceFirst was forced to address these concerns acknowledging that they "cannot stand for racial injustice of any kind, including in our technology."

### C. THE COMPLAINT AND THE MOTION

In her Complaint, Plaintiff, a customer of Fairway Markets in New York City, brings three claims against Defendant which Plaintiff now zealously defends.

*First*, Plaintiff alleges Defendant violated New York's consumer protection statute, New York General Business Law § 349 ("N.Y. GBL § 349"). Contrary to New York's strong public policy of protecting privacy consumers' interests as well as guidance from the F.T.C., failed to

7

adequately disclose how their facial recognition data was being shared and retained by Defendant and FaceFirst and that Defendant made misleading statements about how their data was being "regularly" erased or that it was being profited from by both Defendant and FaceFirst, and that this was a deliberate act to make Plaintiff and Class members "unaware of the full consequential scope and breadth of Defendant's actions." Compl. ¶¶ 3, 6, 7, 8, 74, 75, 77.

*Second*, Plaintiff alleges Defendant violated the Biometrics Law, which bars establishments like Fairway Markets from sharing customers' "biometric identifier information" in exchange for "anything of value" or "otherwise profit[ing] from the transaction of biometric identifier information." Plaintiff alleges that Defendant collected their valuable facial geometry scans, which constitutes biometric identifier information, and shared it with a third party (FaceFirst) to carry out its stated profit-driven attempt to grow revenue by identifing consumers, reduce shrinkage, save on hiring and training loss prevention, and to keep costs down for consumers at retail. *Id*. ¶¶ 3, 15, 27, 36, 42, 53, 54, 58, 81 84, 85, 89, 90. FaceFirst states that sharing biometric identifier information with their software for processing purposes delivers a financial return which averages 34% reduction in shrinkage per retail store. *Id*. ¶ 46.

*Third*, Plaintiff alleges that Defendant was unjustly enriched through the collection and use of her valuable facial recognition data for profit by Defendant for the profit driven motives as stated above. Compl. ¶¶ 87-91.

Defendant seeks dismissal under Fed. R. Civ. P. Rule 12(b)(6). (Mot. at 1.) As described, the Complaint alleges plausible claims and the Motion should be denied as to Counts I, II and IV.

## **LEGAL STANDARD**

"Under [Fed. R. Civ. P. Rule] 8(a)(2), a complaint must contain a short and plain statement of the claim showing that the pleader is entitled to relief. Detailed factual allegations are not

required, but the Rule does call for sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (citation and quotations omitted).

"The assessment of whether a complaint's factual allegations plausibly give rise to an entitlement to relief does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal conduct." *Lynch v. City of New York*, 952 F.3d 67, 75 (2d Cir. 2020) (citation and quotations omitted). In considering a motion to dismiss, the Court must "accept well pleaded factual assertions as true" and "draw all reasonable factual inferences in favor of the plaintiff." *Id.* at 76.

## ARGUMENT

### A.  THE COMPLAINT STATES A CLAIM UNDER N.Y. GBL § 349

To state a claim under N.Y. GBL § 349, Plaintiff must allege "(1) the defendant's deceptive acts were directed at consumers, (2) the acts are misleading in a material way, and (3) the plaintiff has been injured as a result." *Suarez v. California Nat. Living, Inc.,* 2019 WL 1046662, at *7 (S.D.N.Y. Mar. 5, 2019).[5]

In New York, New York's unfair and deceptive acts and practices law, N.Y. GBL § 349 is remedial in purpose and is expansively construed. *Food Parade, Inc. v. Office of Consumer Affairs of City of Nassau*, 859 N.E.2d 472, 476 (N.Y. 2006); *see also Kuklachev v. Gelfman*, 600 F. Supp. 2d 437, 476 (E.D.N.Y. 2009) ("New York courts apply [N.Y. GBL § 349] broadly.").

### 1.  THE COMPLAINT ALLEGES DEFENDANT OMITTED MATERIAL INFORMATION

---

[5] Defendant's Motion only concedes the first element of N.Y. GBL § 349 (consumer oriented conduct), contesting only the existence of "materially misleading" conduct and cognizable injury. (Mot. at 21-25.)

Without citations to any actual data privacy cases, Defendant's Motion concludes that the use of facial recognition technology sans adequate consent and blanketed in misleading statements by Defendant is not "materially misleading" in violation of N.Y. GBL § 349. (Mot. at 21-25.) As discussed below, this Court and others around the country do not support this argument.

***Defendant's Omissions About Consumer Privacy Practices Violate N.Y. GBL § 349***. The standard for pleading an omission under N.Y. GBL § 349 is the type of circumstance where "defendant fails to supply a consumer information that it alone posses, and where that information would be material or important to a reasonable consumer and where the consumer could not have reasonably obtained the information other than through the defendant." *Yullie v. Uphold HQ Inc.*, 686 F. Supp. 3d 323, 347 (S.D.N.Y. 2023). This is exactly what Plaintiff alleges: that Defendant had sole knowledge of its sharing of facial recognition with FaceFirst, that the collection of facial recognition data is material and important, and that Plaintiff could not have known otherwise. Compl. ¶ 15 ("Plaintiff's privacy rights were intruded upon […] [when] her facial recognition data was diminished when Defendant[] shared [it] to third parties for profit – all without her knowledge or consent.").

The Motion cites to *Yullie* for the proposition that there is no omission because Plaintiff had notice of the sharing of her facial recognition data by way of six bullet points which purportedly cite to the Complaint. (Mot. at 21.) However, none of these statements actually prove that Plaintiff had any idea whatsoever that her facial recognition data was being shared with FaceFirst. (*Id.*) As follows, each bullet point twists the words in the Complaint to portray evidence of how or why Plaintiff knew her facial recognition data was being shared with FaceFirst, but the reality is that none of these points come even close within that conclusion (Mot. at 21-22.):

10

- wrongfully concluding that Plaintiff must have known about Defendant's conduct because there was a study eight years ago by MIT Media Lab about "the use of facial recognition technology generally"

- wrongfully concluding Plaintiff must have known about Defendant's conduct because retailers have used facial recognition technology for "years"

- wrongfully concluding that Plaintiff must have known about Defendant's conduct because "hundreds if not thousands" of retailers use facial recognition technology

- mistakenly asserting that Defendant confirmed herself that the company deploys facial recognition technology and, therefore, should have known that her data was being shared with FaceFirst

- mistakenly asserting that Plaintiff's personal knowledge of Defendant's facial recognition data collection means she should have known that it was being shared with FaceFirst

- mistakenly asserting that the signage displayed at stores, which did not allege to have mentioned FaceFirst, means that Plaintiff also should have known that her data was being shared with FaceFirst

Defendant's omission regarding the nature of the collection and sharing of Plaintiff's sensitive biometric data is the type of privacy invasion which is a deceptive act or practice under N.Y. GBL § 349. *See, e.g. Nick v. Target Corp.*, 2:15-cv-04423-LDW, at ECF No. 41, at *12 (E.D.N.Y. Sept. 13, 2017) (motion to dismiss denied where Defendant "failed to provide information to consumers in obtaining and disclosing personal information – actionable omissions under under N.Y. GBL § 349"); *citing Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20 (N.Y. Feb. 14, 1995) ("[i]n the case of omissions in particular

11

– the subject of the present case – the statute surely does not require businesses to ascertain consumers' individual needs and guarantee that each consumer has all relevant information specific to its situation. The scenario is quite different, however, where the business alone possesses material information that is relevant to the consumer and fails to provide this information."). Such is the case here – Plaintiff had no way of knowing how her facial recognition data was being used, if at all. Compl. ¶ 15.

Further, it is not incumbent on Plaintiff, who is not a facial recognition expert, to know how her sensitive data is being used as part of a surrepticious system, and Defendant's own misstatements about the "regular" erasing of this data only sews further confusion. *Id.,* ¶ 3. Within the confines of privacy litigation jurisprudence, courts agree with Plaintiff. *See, e.g.*, *GoodRx Holdings, Inc.*, at *12 (holding "[Defendants] cannot demand that Plaintiffs allege the details about these tools, which only Defendants would possess, to survive a motion to dismiss."); *In re Meta Pixel Tax Filing Cases*, 724 F. Supp. 3d at 1004 (N.D Cal. 2024) (rejecting the argument that plaintiffs had to identify specific communications that were allegedly intercepted); *Doe v. FullStory, Inc.,* 712 F. Supp. 3d 1244, 1259 (N.D. Cal. 2024) ("[I]n the absence of discovery [about] how the [technology] actually work[s] and what information was tracked, it would be premature to hold that TikTok's alleged tracking of the various pages that plaintiff may have visited within [the] platform when seeking healthcare services cannot constitute an invasion of privacy."); *Doe v. Regents of University of California*, 672 F. Supp. 3d 813, 819 (N.D. Cal. 2023) (holding that "[a]t the motion to dismiss stage, it is not necessary for plaintiff to provide more specific details … [t]o require more would place the burden on [plaintiff] to describe UC Regents' technical systems without the benefit of discovery.") (collecting cases).

12

It is well-established law that omitting information about collection and sharing of sensitive information without adequate consent, as described in this Action, constitutes a deceptive act or practice under N.Y. GBL § 349. *See, e.g., GoodRx Holdings, Inc., et al.*, 2025 WL 229385, at *22 (N.D. Cal., July 22, 2025) (holding that the "sharing of [sensitive] information without consent may constitute a deceptive act actionable under the [N.Y. GBL § 349.]); *Castillo v. Costco Wholesale Corp.*, 2024 WL 4785136 (W.D. Wa. Nov. 14, 2024); (holding it is an "unfair or deceptive act" when a Defendant "uses or discloses customers personal [] data without their consent"); *citing Anonymous v. CVS Corp.*, 728 N.Y.S.2d, 333, 339-340 (Sup. Ct. 2001) ("[T]he practice of intentionally declining to give customers notice of an impending transfer of their critical [] information in order to increase the value of that information appears deceptive.").

Following the long history of cases regarding Defendant's conduct through the lense of N.Y. GBL § 349, this Court should wholly reject this argument.

### 2.  THE COMPLAINT ALLEGES COGNIZABLE INJURIES

Once again, Defendant attempts dismiss Plaintiff's well-pled N.Y. GBL § 349 claim with zero support from actual data privacy cases – only this time, claiming that Plaintiff "fails to plausibly allege a cognizable injury." (Mot. at 24-25.)  This theory is misplaced.

Plaintiff alleges that her "privacy rights were intruded upon […] [when] her facial recognition data was diminished when Defendant[] shared [it] to third parties for profit – all without her knowledge or consent." Compl. ¶ 15.  She states that her injuries include "damage and dimunition to the value of her biometric data" which "is heightened by the immutable nature of biometric identifiers … [which] cannot be changed or revoked" as well as "emotional distress." *Id.* ¶¶ 15, 60-61.  This injury is further exacerbated by Defendant's misrepresentations about Plaintiff's biometric data use. *Id.* ¶ 3.

For decades, privacy injuries, including those caused by the surrepticious collection of information as well as the disclosure of that information, are the types of cognizable injuries which courts have held that N.Y. GBL § 349 protects against.  *See, GoodRx Holdings,* at *11 ("Plaintiff […] has statutory standing [for his injuries] because the surrepticious collection of his [] information is a privacy violation and therefore, a compensable harm under [N.Y.] GBL § 349"); *citing, Cooper v. Mount Sinai Health Systems, Inc.,* 742 F. Supp. 3d. 383-384 (S.D.N.Y. 2024) ("a privacy injury can be the basis for a [N.Y. GBL] § 349 claim wher the confidentialy, individually identifiable information […] is collected without the individual's knowledge or consent."); *Bose v. Interclick, Inc.*, 2011 WL 4343517, at *9 (S.D.N.Y. Aug. 17, 2011) ("[C]ourts have recognized … privacy violations as injuries for purposes of [N.Y. GBL § 349.]"); *Meyerson v. Prime Realty Services, LLC*, 796 N.Y.S.2d 848, 856 (N.Y. Sup. Ct. 2005) ("[I]t cannot be doubted that a privacy invasion claim … may be stated under [N.Y.] GBL § 349") (collecting cases).

Following the long line of relevant cases before this Action, the same holds true here: it is undeniable that Defendant's conduct caused injury under N.Y. GBL § 349.

## B.  THE COMPLAINT STATES A CLAIM UNDER THE BIOMETRIC LAW

### 1.  RELEVANT BACKGROUND AND LIMITED HISTORY

New York City codified the Biometric Law in 2022 to address the growing privacy concerns of how retail and other businesses collect, use, and share customers' biometric identifier information.  *See,* NYC City Council's Committee Report of the Governmental Affairs Div. (Dec. 10, 2020) (the "Committee Report") (Ex. A.).

In this case, the second prong of the Biometric Law, Section 22-1202(b), is the sole provision of the Biometric Law at issue.[6]  This provision states: "[i]t shall be unlawful to sell,

---

[6] The Biometric Law has two substantive provisions:

lease, trade, share in exchange for anything of value or otherwise profit from the transaction of biometric identifier information." Biometric Law, at § 22-1202(b). The Biometric Law defines "biometric identifier information" as "scan of . . . face geometry" (*i.e.*, facial recognition). *Id.* § 22-1201. It is undisputed that Defendant collects and uses biometric identifier information as Defendant admits that it applies a facial recognition system to scan Plaintiff and Class members' face geometry. (Mot. at 2-3, 6, Fn. 1, Fn. 2.)

When the New York City Council proposed and codified the Biometric Law, it was clear that the intent of the law was to apply to the predicate as alleged in this Action; for example, the Committee Report not only states that "[i]n New York City […] establishments frequently do not inform customers that facial recognition software is being used, and it is unclear what companies or business do with the data once it is collected […] there have been numerous incidents of companies collecting this information and either selling it to, or having it harvested by third parties, without the knowledge or consent of customers," it also names FaceFirst as one of the providers of this technology for retail business such as Defendant in its opening pages. Committee Report, at 4-5, 14. Further, the Committee Report states about FaceFirst:

> [S]ervices such as FaceFirst offer facial recognition technology specifically targeted towards retailers using "surveillance … and an underlying software platform that leverages artificial intelligence to [prevent] theft, [fraud,]… and… violence. FaceFirst can scan faces as far as 50 to 100 feet away. When a person

---

(1) *Section 22-1202(a)*, which is a disclosure provision, and
(2) *Section 22-1202(b)*, which is a restriction on the collection, retention, conversion, storage or sharing of biometric information for profit.

This Action only asserts a claim under Section 22-1202(b), which bars profit-motivated collection and transaction of biometric information. References by Defendant's motion which confuse adequate signage and disclosure are irrelevant, given there is no cause of action in the Complaint asserted under Section 22-1202(a). Plaintiff's references to adequate disclosure are in reference to Defendant's failure to properly inform Plaintiff and Class members about how their data is being used.

walks through a store's entrance, a video camera captures multiple images of the shopper, selects the clearest one and adds the shopper's picture to the store's client database. If a match occurs, either recognizing the shopper as a suspected shoplifter or important client, the software can alert employees within seconds of the person's entrance into the store. After being added to the database, the software can recognize the customer on each subsequent visit to the store.

*Id.*, at 5.

To date, only two cases (including *Gross*), have interpreted the Biometric Law, but none have done so in the retail-specific context in this Action, which is for the purpose of protecting consumer privacy from businesses deploying facial recognition to increase profits and reducing costs specific to: (1) reducing shrinkage and theft of products sold in stores to save money, (2) cutting costs on hiring and training of loss prevention employees, (3) identifying customers, and (4) keeping down grocery store costs for consumers. Other actions address the use of this technology in a different context, including banning individuals from various premises (as in *Gross*) and to link consumer biometrics to enhance optional payment systems. *See gen., Gross*, ECF No. 18 (facial recognition used to ban consumers from a stadium); and *Mallouk, et al. v. Amazon.com, Inc., et al.*, Case No. 2:23-cv-00852 (W.D. Wa. 2023), at ECF No. 42 (facial recognition linked to payment systems) ("*Mallouk*").

Despite only having two cases (*Gross* and *Mallouk*) which have interpreted the Biometrics Law and the Committee Report to work off of, a slew of sister courts around the country have interpreted Illinois' Biometric Information Privacy Act ("BIPA") – which was the called the "forerunner in governing this technology" and model for the Biometric Law – because BIPA was enacted in 2008 whereas the Biometric Law was enacted only recently, in July of 2022. Committee Report, at 17. Plaintiff and Class members contend that the theory of the case and the harm caused as alleged in the Complaint falls squarely within the type of conduct the Biometrics Law seeks to prevent and protect against.

16

## 2.  THE COMPLAINT STATES A § 22-1202(b) CLAIM

Plaintiff alleges that Defendant violates the relevant provision of the Biometric Law, which makes "[i]t shall be unlawful to sell, lease, trade, share in exchange for anything of value or otherwise profit from the transaction of biometric identifier information."  Biometrics Law, at § 22-1202(b).

In the Motion, Defendant makes three arguments for why Plaintiff does not adequately allege a violation under the Biometric Law because (1) Plaintiff relies on mere tangential benefits of using facial recognition as Defendant's "for profit" motive, (2) Plaintiff incorrectly posits that Defendant profits solely by sharing biometric information with its vendor, and (3) Plaintiff failed to asserts that Defendant shared or transacted data with anyone (nor did it profit from this non-existent sharing or transacting).  (Mot. at 5-8.)  Each of these assertions defy the text of the Complaint and the Biometric Law, and Plaintiff addresses each argument as follows.

***Defendant Tangibly Profits from the Collection, Sharing and Use of Biometric Information.***  The Complaint alleges that Defendant collects Plaintiff and Class members' sensitive and valuable biometric identifier information (in the form of facial geometry scans) and transacts that data with at least one third-party, FaceFirst, for the purpose of increasing profits and reducing costs through (1) quantifiably reducing shrinkage and theft of products sold in stores to save money, (2) cutting costs on hiring and training of loss prevention employees, (3) identifying customers, and (4) keeping down grocery store costs for consumers.  Compl. ¶¶ 2, 3, 36, 46, 54, 55, 56, 58, 85, 90.  This conduct violates the statute, as it constitutes "shar[ing] in exchange for anything of value . . . of biometric identifier information."  Biometric Law, at § 22-1202(b).

While both the Biometric Law and the Committee Report do not clearly define what it means to "sell, lease, trade, share in exchange for anything of value or otherwise profit from the

17

transaction of biometric identifier information," this Court's decision in *Gross* delineates what this does not mean and the interpretation of nearly identical language from BIPA's jurisprudence provides clarity as well.

First, Defendant repeatedly insists throughout its Motion that the Biometric Law "squarely" does not apply because this Action is the exact same case as *Gross*. (Mot. at 6.) It is not. Nearly the entirety of Defendant's Motion collapses on itself due to its overreliance on this predicate.

*Factually*, *Gross* involved the use of facial recognition in a non-retail context where the "for profit" theory was alleged as "a controversial policy of banning lawyers and their entire firms from MSG's venues during the pendency of any lawsuit to deter lawyers from suing MSG, which increases MSG's profits […] [which] deliver[s] substantial economic value and profits to MSG by deterring litigation and thereby reducing MSG's litigation expenses." *Gross*, at 3. Here, the facts are entirely different. The Complaint alleges that Defendant profits from the collection and sharing of each facial recognition scan by discerning which customers are in the store for the purpose of increasing profits (by reducing product loss through shrinkage and offering cheaper grocery store costs for customers, which allow for a higher volume of sales) and reducing costs (by saving on hiring and training of employees for loss prevention and customer identification). Compl. ¶¶ 2, 3, 36, 46, 54, 55, 56, 58, 85, 90.

*Legally*, the question presented in *Gross* was "whether [a] defendant profits when it shares biometric data with a third-party vendor to facilitate excluding from its venues attorneys employed by law firms involved in litigation against it." *Gross*, at 2. As this Court states in *Gross*, and which Defendant notably omits from their motion, this provision of the Biometrics Law "makes it unlawful for companies to profit from the transaction itself […] [t]o say that a company

18

profits when it purchases a product or service defies common sense." *Id.,* at 3-4.  In stark contrast to Defendant's Motion, this is not at all what the Complaint says.

Plaintiff's Complaint argues that the reason for the collection and subsequent sharing of facial recognition data is solely profit-driven, because Defendant is attempting to increase profits and reduce costs through (1) reduce shrinkage, (2) cut costs on hiring and training of employees, (3) identify customers, and (4) keep down grocery store costs for consumers.  Compl. ¶¶ 2, 3, 36, 46, 54, 55, 56, 58, 85, 90.  The collection and transmission of facial recognition templates through Defendant's video camera hardware from each individual consumer to FaceFirst's software is needed in order for this process to work.  *Id.,* ¶ 5.  Defendant's own spokesperson confirms this, stating that Defendant's conduct is driven by how "[r]etail theft and shoplifting [have] a high rate of repeat offense and [which] drive[] up grocery store costs for all consumers" and because the use of "[FaceFirst] [helps] to prevent more crime in store."  *Id.*  According to FaceFirst, FaceFirst provides a "[r]apid [return on investment]" as well as tangible, pecuniary benefits for Defendant by deploying facial recognition at the behest of consumer privacy, as the use of FaceFirst's software reduces shrinkage in each store by 34%.  *Id.,* at ¶¶ 38, 46.  These are clear, quantifiable profits which Defendant makes through deploying FaceFirst.

Defendant also compares this case to *Mallouk*, which is also easily distinguishable from this Action.  *Mallouk* concerned the collection of biometric data by Amazon to "detect what products custoemrs chose to walk out [of the stores] with and [to] charge the cost to customers' credit cards or Amazon accounts."  *Mallouk*, 2024 WL 3511015, at *5 (W.D. Wa. July 23, 2024). In *Mallouk*, the Court dismisses Plaintiffs' complaint because the "for profit" theory "included opportunities to install more devices, advertising, and growing and improving its database and technology by sharing biometric data with third-party retailers."  *Id.,* at *12-13.  This type of

profiting from transactions of biometric data is hypothetical in nature and only profit's Amazon's own biometric data collection system, which is unlike the concrete profiting Defendant's use of FaceFirst is akin to here.  Further, the Court in *Mallouk* states that Amazon did not share any data with a third party, since one of the retailers it provided their biometric data collection system with (Whole Foods) is owned by Amazon itself.  *Id.,* at *13-14.  Defendant's citations to *Mallouk* are yet another example of a Motion which fails to properly distinguish and explain how cases apply.

In BIPA jurisprudence from other cases from around the country, Plaintiff's same "for profit" theory finds ample support.  For example, in *Melzer v. Johnson & Johnson Consumer Inc.,* an unpublished motion to dismiss decision from the District of New Jersey where Plaintiff prevailed on her "for profit" theory  under BIPA, that district court analyzes the body of law pertaining to such a "for profit" theory.  *See, gen.*, 2023 WL 3098633 (D.N.J. Apr. 26, 2023).

In *Melzer*, Plaintiff alleged Defendant violated Section 15(c) of BIPA, which bans "a private entity from selling, leasing, trading, or otherwise profiting from an individual's biometric data."  *Id.,* at 12-14.  The plaintiff in *Melzer* alleged that Defendant profited from her biometric data when it was used for a digital makeup try-on tool.  *Id*.  The Court in *Melzer* analyzed BIPA decisions from courts around the country, stating that the "for profit" prong of Section 15(c) "does not require a direct sale of biometric data" and that "Section 15(c) applies to transactions with two components: '(1) access to biometric data [which] is shared to given to another; and (2) in return for that access, the entity receives something of value."  *Id.* (motion to dismiss BIPA Sect. 15(c) claim denied); *citing Mayhall v. Amazon Web Services,* 2022 WL 2718091, at *12 (W.D. Wa. May 24, 2022) (same); *also citing Vance v. Amazon.com, Inc.*, 534 F. Supp. 3d 1314, 1321 (W.D. Wa. Apr. 14 2021) (same).

20

Consistent with the analysis of BIPA Section 15(c) from *Melzer*, Plaintiff's Complaint under the Biometric Law follows the same line of thinking: that Defendant profited from her biometric data in a tangible way – which, here, happens to include actual direct pecuniary gain and through increased efficiencies which cut costs. Other courts have found that consumers can bring BIPA claims against retail locations which who collect, share, and use biometric information through similar theories. *See, e.g. Clearview AI*, at *4 (motion to dismiss biometric privacy claim denied where plaintiffs "sufficiently stated a concrete injury-in-fact […] by alleging that Macy's profited from using [facial recognition] to prevent losses and improve customer experience, and that as a result of Macy's use, plaintiffs' biometric information was compromised."); *Target Corp.*, at *5 (motion to dismiss biometric privacy claims denied where "plaintiffs [] claim that Target uses the facial geometry of its patrons to track and detect theft").

Following in line with the plain meaning of the text of the Biometric Law, the Biometric Law's legislative history by way of the Committee Report, the limited jurisprudence on the Biometric Law (including *Gross*), and BIPA's deeper jurisprudence, each of these confirm that Plaintiff's Biometric Law cause of action should not be dismissed.

***Defendant's Profits Are Not Made Merely By Sharing Biometric Data with FaceFirst.***
Defendant erroneously claims that Plaintiff's Complaint alleges that the profits made by Defendant because Defendant shares biometric data with FaceFirst – which improves FaceFirst's technology. (Mot. at 6.) The Complaint does Plaintiff allege this at all.

Defendant generally cites Paragraph 54 of the Complaint for this proposition without quoting it. (*Id.*) This is the actual text of that paragraph in its entirety (Compl. ¶ 54):

> Fairway exchanges facial recognition data for value when it shares biometric information with FaceFirst's loss prevention teams, as well as when it creates consumer profiles from its data set. Fairway and FaceFirst do this pursuant to contract – where both parties profit: Fairway gets the ability to use FaceFirst's

21

software and reaps the benefits of improvements in that software as it provides FaceFirst with more data, while FaceFirst is able to continue to profit from the use of new data to train its artificial intelligence and machine learning as well as to sell more software products attributable to its security successes.

No where in Paragraph 54 does Plaintiff state that her theory is based off how Defendant profits from improved facial recognition systems as a result of providing FaceFirst with data. In fact, the preceding paragraph offers additional context, explaining that the relationship between Defendant and FaceFirst one where each party provides some role in the collection of facial recognition data from Plaintiff and Class members, stating "[t]he hardware is likely provided by Fairway, while the software that powers the facial recognition collectionis reported to be supplied by FaceFirst." *Id.* ¶ 53. With a lone citation to *Gross,* this is another exemplification of how Defendant contorts Plaintiff's own words in an effort to tie this case through the Motion's non-critical reading of *Gross* itself.

***Defendant Shares and Transacts Biometric Data With FaceFirst.*** Finally, Defendant's last attempt to sully Plaintiff's Biometric Law claim is to claim, with zero cites to legal authority, that Defendant does not share or transact biometric data at all and that Plaintiff does not state with whom that data is shared or transacted with. (Mot. at 7.) Specifically, Defendant states "[m]issing from the Complaint, however, are any allegations regarding the entity(ies) with *whom* Wakefern purportedly shared or transacted data." *Id.*

In six different ways, Plaintiff's Complaint states that her biometric data is collected by Defendant and that the data is shared with FaceFirst, including: (1) naming FaceFirst as a co-conspirator, (2) inclusion of Defendant's own statements about their use of FaceFirst, (3) citations to Defendant's spokesperson to news outlets in 2023 about how consumers should contact "our technology provider" FaceFirst, (4) an entire section of the Complaint devoted to how FaceFirst works, (5) research and a discussion of how FaceFirst's application causes civil rights concerns,

22

and (6) an explanation of the relationship between Defendant and FaceFirst.  Compl. ¶¶ 2, 3, 18-20, 36-46, 47-51, 52-56.

This fatal attempt to undercut Plaintiff's Biometric Law claim is highly concerning, especially considering that, elsewhere in Defendant's own Motion, it: (1) accepts that FaceFirst is Defendant's facial recognition software provider; (2) includes acknowledgements that Plaintiff claims FaceFirst is the software provider, (3) makes a statement by where "[Defendant] concedes the truth of the allegations set forth in Plaintiff's Complaint," (4) Defendant's Statement of Facts discusses Defendant's use of FaceFirst numerous times stating "Wakefern stores use 'FaceFirst's facial recognition software' for safety, security, and loss prevention," and (5) clearly saying on the page of Defendant's motion immediately preceding this very argument that "Plaintiff posits that Wakefern profits when it shares biometric data with its third party vendor[] FaceFirst."  (Mot. at 2-3, 6, Fn. 1, Fn. 2.)

At best, Defendant misstated its position, and at worse, this is an attempt by Defendant to improperly lead this Court astray with a frivolous argument.

C.  **THE COMPLAINT STATES A CLAIM FOR UNJUST ENRICHMENT**

Plaintiff alleges that Defendant was unjustly enriched due to the collection of her biometric data and the profit made from the collection and use of that data.  Compl. ¶¶ 87-91.

In the Motion, Defendant claims that Plaintiff's unjust enrichment claim fails for three reasons: (1) it is precluded by Plaintiff's N.Y. Civ. Rights Law claim, (2) the Complaint does not state how Defendant was enriched through the collection and sharing of Plaintiff's biometric data for profit and that Wakefern's conduct is allowed under the Biometric Law, and (3) the Complaint does not allege a sufficiently close enough relationship between Plaintiff and Wakefern for an actionable claim under New York law.  (Mot. at 15-20.)  Each of these arguments should be denied.

23

*First*, Defendant's argument that Plaintiff's N.Y. Civ. Rights Law claim is precluded fails because Plaintiff is no longer asserting her claim under that statute. (*Infra*, at Fn. 3.) Defendant tries again to grasp onto this Court's ruling in *Gross* through the suggestion Plaintiff would need to be "excluded or banned" from "any Wakefern-owned location" for Defendant to profit – but no where in Plaintiff's Complaint is this articulated as part of the theory of her case. (Mot. at 18.).

*Second,* a defendant, like Wakefern, can be unjustly enriched by profiting from the collection, retention, or sharing of consumers' valuable facial recognition data. *Mallouk*, at *16-17 (motion to dismiss denied where consumers provided biometric data which was collected to enhance Amazon's "Just Walk Out" software); *In re Clearview AI, Inc. Consumer Priv. Litig.*, Case No. 1:21-cv-00135, ECF No. 272, at *11-12 (N.D. Ill. Jan. 27, 2022) (motion to dismiss unjust enrichment denied-in-part where facial recognition data was collected for profit in retail stores).

Indeed, Defendant's Motion, albeit in an incorrect context, states that it profits from the use of Plaintiff's biometric data as collected by facial recognition technology for "safety, security, and loss prevention purposes." (Mot. at 19.) Furthermore, Plaintiff's Complaint makes the same argument: that Defendant profits from the transactional collection of her facial recognition for profit. Compl. ¶¶ 2, 3, 36, 46, 54, 55, 56, 58, 85, 90. This argument does not make legal or logical sense. Here, Defendant too claims its conduct does not defy unjust enrichment principles under New York law because the collection of facial recognition data by Defendant is allowed under New York's Biometric Law. Plaintiff contends otherwise – and even assuming this conduct was not allowed by the Biometric Law, it does not mean that Defendant is still allowed to profit from that data to the detriment and expense of Plaintiff, as common law requires. *Pro Bono Investments, Inc. v. Gerry*, 2005 WL 2429777, at *8 (S.D.N.Y. Sept. 30, 2005) (reciting the elements of a common law unjust enrichment claim).

*Finally*, Defendant contends that there is no sufficiently close enough relationship between Plaintiff and Defendant because the Complaint fails to allege Defendant had knowledge of Defendant's existence prior to the filing of this Action. (Mot. at 19.)  There is no element of unjust enrichment claiming that Defendant must know precisely who Plaintiff is when they enrich themselves at a plaintiff's expense. *See, e.g. Gerry*, at *8.  Even so, Plaintiff clearly alleges that she has a relationship with Defendant by virtue of shopping at Fairway Market's stores – at this stage of the litigation, this purchase-oriented contract between the parties more than enough to allege such a relationship.  Compl. at 14; *Travelsavers Enters. v. Analog Analytics, Inc.*, 149 A.D.3d 1003, 1006 (App. Div., 2nd Apr. 19, 2017) (denying motion to dismiss unjust enrichment claim and distinguishing *Georgia Malone* where a contractual agreement was sufficient to show enough of a close relationship sans privity to warrant a recovery of damages for unjust enrichment).

### D.  PLAINTIFF SHOULD BE GIVEN THE ABILITY TO AMEND HER COMPLAINT

Plaintiff contends that her Complaint sufficiently states claims as to Counts I, II and IV. Under Fed. R. Civ. P. Rule 15, the ability for a litigant to amend her complaint is granted liberally and "leave to amend a pleading should be freely granted." *Agerbrink v. Model Service LLC*, 155 F.Supp.3d 448, 452 (S.D.N.Y. 2016).  The Complaint sufficiently states claims as to Counts I, II and IV.  To the extent that the Court disagrees, Plaintiff requests amendment of her Complaint.

### CONCLUSION

For the reasons set forth herein, the Court should deny the Motion with respect to Counts I, II and IV.  Should the Court be inclined to grant the motion or any part of it, Plaintiff respectfully requests that this dismissal be without prejudice and that she be given leave to replead.

Dated: Nov. 7, 2025                          Respectfully submitted,

                                             /s/ Blake Hunter Yagman
                                             Blake Hunter Yagman
                                             **SCHONBRUN SEPLOW HARRIS**
                                             **HOFFMAN & ZELDES, LLP**
                                             1330 Ave. of the Americas, Suite 23A
                                             New York, New York 10019
                                             Tel.: (929) 709-1493
                                             *byagman@sshhzlaw.com*

                                             *Attorney for Plaintiff Alexis*
                                             *Schottenstein and the Proposed Class*

26