UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

ALEXIS SCHOTTENSTEIN, on behalf of
herself and all others similarly situated,

                         Plaintiff,

             -against-                                  25-cv-8635 (LAK)

WAKEFERN FOOD CORP.,

                         Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## MEMORANDUM OPINION

        Appearances:

                Blake Hunter Yagman
                SCHONBRUN SEPLOW HARRIS HOFFMAN & ZELDES, LLP
                *Attorney for Plaintiff*

                Maximilian D. Cadmus
                Lauren B. Cooper
                Michael A. Broadlieb
                BAKER DONELSON BEARMAN CALDWELL & BERKOWITZ, PC
                *Attorneys for Defendant*

LEWIS A. KAPLAN, *District Judge.*

        This case concerns the use of facial recognition technology at Fairway Market

grocery stores, which allegedly are owned and operated by defendant Wakefern Food Corp.

("Wakefern"). Plaintiff Alexis Schottenstein alleges that Wakefern's use of the technology violates

New York City's biometrics law and New York State's consumer protection and civil rights laws.

Wakefern moves to dismiss.

2

***Facts***[1]

*Wakefern's Use of Facial Recognition Technology*

Wakefern allegedly owns over 200 grocery stores across the United States, including several stores in New York City operating under the name Fairway Market.[2]  Wakefern contracts with FaceFirst, a facial recognition software provider, to reduce shoplifting and theft.[3]  According to FaceFirst's website, its technology "can instantly detect habitual shoplifters and other persons of interest the moment they enter the store."[4]  FaceFirst "notifies [retailers'] designated personnel when persons of interest . . . enter your stores, giving them real-time, actionable intelligence they need to help keep your valued customers and associates safe."[5]

According to a statement given by Wakefern to a local news station, Wakefern uses FaceFirst "to identify repeated offenders, from repeat shoplifters to organized retail theft rings — the people who come into the store with the intention to steal."[6]  The statement adds also that "the technology is not being used for any other purpose,"[7] and plaintiff does not allege that the

---

[1] At this stage, the Court assumes the truth of the well-pleaded factual allegations of the complaint and draws all reasonable inferences in the plaintiff's favor.  See *Palin v. N.Y. Times Co.*, 940 F.3d 804, 809–10 (2d Cir. 2019).

[2] Dkt 1-1 ("Compl.") ¶ 2.  Wakefern disputes that it owns the stores, but acknowledges that resolution of this factual dispute would be unnecessary at this stage.  *See* Dkt 16.

[3] *Id.*

[4] *Id.* ¶ 38.

[5] *Id.*

[6] *Id.* ¶ 3.

[7] *Id.*

technology is used for any purpose aside from theft prevention.

Plaintiff alleges that Wakefern "fail[ed] to disclose [its] biometric data practices,"[8] "secretly incorporated FaceFirst's facial recognition software into [its] loss prevention procedures without providing notice that [it was] collecting the public's biometric data,"[9] and "did not publicly disclose [its use of FaceFirst] technology to its customers."[10]  Plaintiff acknowledges, however, that Wakefern disclosed its use of facial recognition technology on signage displayed at store entrances and in statements to the media.[11]  The signage states:

> "The Business collects, retains, converts, stores, or shares customers' biometric identifier information, which is information that can be used to identify or help identify you.  Examples of biometric identifier information are eye scans and voiceprints."[12]

---

[8]

*Id.* ¶ 35.

[9]

*Id.* ¶ 58.

[10]

*Id.* ¶ 59; *see also id.* ¶ 59 ("Defendant engaged in fraudulent conduct to prevent Plaintiff Schottenstein and Class members from learning of the conduct as alleged herein.").

[11]

*Id.* ¶¶ 3, 53.

[12]

*See* Dkt 15.  The Court gave advance notice that it contemplated taking judicial notice of the text of the sign and provided an opportunity to object.  *Id.*; *see also* Fed.R.Evid. 201(b) ("The court may judicially notice a fact that is not subject to reasonable dispute because it (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."); *Cooperativa de Ahorro y Credito Aguada v. Kidder, Peabody & Co.*, 993 F.2d 269, 273 (1st Cir. 1993) (district court may take judicial notice of a fact other than at the request of a party where it notifies the parties that it is doing so and affords them an opportunity to be heard). Neither party objected.  *See* Dkts 16, 17.  The Court therefore takes judicial notice of the text of the sign.

*Procedural Posture*

On September 16, 2025, plaintiff filed this action in New York state court on behalf of herself and a putative class of "[a]ll natural persons in the State of New York who had their facial recognition data collected at Defendant's retail stores, including Fairway Markets' grocery stores, using facial recognition software during the applicable statutory period."[13]  The complaint asserts causes of action for violations of (1) New York State's consumer protection statute,[14] (2) New York City's biometrics law,[15] and (3) New York State's Civil Rights Law,[16] and (4) for unjust enrichment.

Wakefern timely removed the action to federal court pursuant to the Class Action Fairness Act ("CAFA") and 28 U.S.C. § 1332.[17]  Wakefern now moves, pursuant to Rule 12(b)(6), to dismiss the action for failure to state a claim upon which relief may be granted.[18]

## *Discussion*

*Legal Standard*

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain

---

[13]  Compl. ¶ 62.

[14]  *See* N.Y. G.B.L. § 349.

[15]  *See* N.Y.C. Admin. Code § 22-1202(b).

[16]  *See* N.Y. Civ. Rights L. §§ 50–51.

[17]  Dkt 1.

[18]  Dkt 9.

sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[19] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[20]  In deciding a Rule 12(b)(6) motion, the Court accepts all factual allegations in the complaint as true and draws all reasonable inferences in the plaintiff's favor.[21]

*The New York Consumer Protection Law Claim*

Section 349 of New York State's General Business Law states, "Deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful."[22]  "A plaintiff under section 349 must prove three elements: first, that the challenged act or practice was consumer-oriented; second, that it was misleading in a material way; and third, that the plaintiff suffered injury as a result of the deceptive act."[23]

Wakefern argues that the complaint does not allege adequately the second element, materially misleading conduct.  "To succeed on the second element under GBL § 349, 'the allegedly

---

[19]

*Ashcroft v. Iqbal*, 556 U.S. 662, 679 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[20]

*Id.* at 678.

[21]

*See Levy v. Southbrook Int'l Invs., Ltd.*, 263 F.3d 10, 14 (2d Cir. 2001).

[22]

N.Y. G.B.L. § 349.

[23]

*Stutman v. Chem. Bank*, 95 N.Y.2d 24, 29 (2000).

6

deceptive acts, representations or omissions must be misleading to a reasonable consumer.'"[24] "This is an 'objective test' that 'may be determined as a matter of law or fact (as individual cases require).'"[25]

As set forth above, plaintiff alleges that Wakefern "fail[ed] to disclose [its] biometric data practices,"[26] "secretly incorporated FaceFirst's facial recognition software into [its] loss prevention procedures without providing notice that [it was] collecting the public's biometric data,"[27] and "inconspicuously incorporated FaceFirst's software in the background and did not publicly disclose this technology technology to its customers."[28] Plaintiff does not allege a wholesale failure to disclose Wakefern's use of facial technology — indeed, she acknowledges that Wakefern disclosed its use of facial recognition technology on signage displayed at store entrances.[29] Instead, she argues that Wakefern omitted material information "regarding the nature of the collection and sharing of [p]laintiff's sensitive biometric data."[30]

---

[24] *Sandoval v. Uphold HQ Inc.*, No. 21-CV-7579 (VSB), 2024 WL 1313826, at *6 (S.D.N.Y. Mar. 27, 2024) (quoting *Goshen v. Mut. Life Ins. Co. of New York*, 98 N.Y.2d 314, 324 (2002)).

[25] *Izquierdo v. Panera Bread Co.*, 450 F. Supp. 3d 453, 461 (S.D.N.Y. 2020) (quoting *Koenig v. Boulder Brands, Inc.*, 995 F. Supp. 2d 274, 287 (S.D.N.Y. 2014)).

[26] Compl. ¶ 35.

[27] *Id.* ¶ 58.

[28] *Id.* ¶ 59; *see also id.* ¶ 59 ("Defendant engaged in fraudulent conduct to prevent Plaintiff Schottenstein and Class members from learning of the conduct as alleged herein.").

[29] *Id.* ¶ 53.

[30] Dkt 12 at 11.

Plaintiff's argument fails because the complaint does not allege any omission by Wakefern, much less a materially misleading one. Signage at the entrances of Wakefern's stores notifies customers that it "collects, retains, converts, stores, or shares customers' biometric identifier information." The complaint does not specify what material information, if any, is omitted from this disclosure. In her memorandum in opposition to the motion, plaintiff argues that the signage did not mention that biometric data was being shared with FaceFirst.[31] But the signage clearly states that Wakefern "shares customers' biometric identifier information." To the extent plaintiff argues that Wakefern should have disclosed the specific entity with which it was sharing biometric data, she does not point to any reason why that omission would be misleading or material to a reasonable consumer. The complaint therefore does not "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[32] Accordingly, plaintiff has not alleged adequately a Section 349 claim.[33]

*The New York City Biometrics Law Claim*

Section 22-1202(b) of New York City's Biometric Identifier Information Law (the "NYC Biometrics Law") provides that "[i]t shall be unlawful to sell, lease, trade, share in exchange

---

[31] *Id.*

[32] *Iqbal*, 556 U.S. at 678.

[33] Wakefern argues also that the complaint fails to allege a cognizable injury arising from the alleged violation of Section 349. Given the disposition of the motion, the Court need not reach this alternate ground for dismissal. In any event, the complaint does not allege an injury caused by materially misleading conduct because it has not alleged any materially misleading conduct.

8

for anything of value or otherwise profit from the transaction of biometric identifier information."[34]

The question presented here is whether Wakefern "otherwise profit[ed]," within the meaning of the

NYC Biometrics Law, when it collected biometric data and shared it with a third-party vendor for

the purpose of identifying potential shoplifters.[35]

The Court addressed a similar issue in *Gross v. Madison Square Garden*

*Entertainment Corp.*[36]  There, the defendant allegedly used biometric identifier information to

facilitate excluding from its venues attorneys employed by law firms involved in litigation against

it.[37]  The Court held that the use did not violate Section 22-1202(b) of the NYC Biometrics Law

because that provision:

> "does not prohibit companies from receiving any benefit, no matter how attenuated, from the sharing of biometric data.  Rather, it makes it unlawful for companies to 'profit from the *transaction*' itself. . . .  The 'profit' that plaintiffs allege that defendant realizes flow[s] from defendant's employment of a broader program, albeit one advanced by biometric data sharing.  The biometric data sharing at issue here is no different from any other tool for which a company may pay a vendor. To say that a company profits when it purchases a product or service defies common sense.
>
> "Second, plaintiffs' interpretation of 'profit' in Section 22-1202(b) is difficult to reconcile with Section 22-1202(a), which explicitly permits the collection and sharing of biometric data for commercial purposes provided that the public is warned.  If 'profit' were constructed to mean any benefit, then the only permissible commercial sharing of biometric data would be for applications that are not useful. . . .  Plaintiffs' interpretation effectively would ban biometric data sharing by

---

[34]    N.Y.C. Admin. Code § 22-1202(b).

[35]    Compl. ¶ 3.

[36]    No. 23-CV-3380 (LAK) (JLC), 2024 WL 2055343 (S.D.N.Y. May 7, 2024).

[37]    *Id.* at *1.

companies, thereby rendering Section 12-1202(a) meaningless."[38]

Here, plaintiff argues that Wakefern profits from the collection, use, and sharing of biometric data by reducing theft of products sold in its stores, cutting costs on hiring and training of loss prevention employees, identifying customers, and keeping down grocery store costs for customers.[39]  This argument fails for the reasons set forth in *Gross*: (1) the NYC Biometrics Law does not prohibit any commercially useful application of biometric data, (2) to say that Wakefern profits when it purchases a service from FaceFirst defies common sense, and (3) plaintiff's position cannot be reconciled with Section 22-1202(a).

Plaintiff nevertheless argues that the use of biometric data in the retail context is distinct from the use at issue in *Gross* (identifying attorneys involved in litigation against an arena owner).  But this is a distinction without a difference.  In *Gross*, the use of biometric data allowed the defendant to detect attorneys it did not want to admit, a task that otherwise would have required it to hire and train people to perform that task.  Furthermore, the use of biometric data for that purpose furthered the defendant's commercial interests by deterring attorneys from bringing litigation against it.  That the use of biometric information conferred a benefit on the defendant did not bring that use within the ambit of Section 22-1202(b).  So too here, that the use of biometric information may enable Wakefern to reduce costs does not mean that Wakefern "profit[s] from the transaction of biometric identifier information."[40]

Plaintiff argues also that the legislative history of the NYC Biometrics Law shows

---

[38]     *Id.* (quoting N.Y.C. Admin. Code § 22-1202(b) (emphasis added)).

[39]     Dkt 12 at 17–19.

[40]     N.Y.C. Admin. Code § 22-1202(b).

that it was intended to apply to Wakefern's use of biometric data. Plaintiff points to the following passage from the New York City Counsel's Committee Report on the law: "In New York City . . . establishments frequently *do not inform customers* that facial recognition software is being used, and it is unclear what companies or business do with the data once it is collected. . . . [T]here have been numerous incidents of companies collecting this information and either selling it to, or having it harvested by third parties, *without the knowledge or consent of customers* . . . ."[41] This passage concerns the use and sale of biometric data without adequate notice to customers. The NYC Biometrics Law addresses this concern through Section 22-1202(a), which requires commercial establishments to "plac[e] a clear and conspicuous sign" near entrances disclosing the collection, retention, and sharing of biometric identifier information.[42] But plaintiff does not bring a claim under Section 22-1202(a). This legislative history therefore does not support plaintiff's argument. Rather, it confirms that the Council intended to regulate, not prohibit, the use of biometric data, supporting the Court's reasoning here and in *Gross*.

Finally, plaintiff points to decisions interpreting the Illinois's Biometric Information Privacy Act (the "Illinois BIPA"). But these are unpersuasive.

First, district court decisions from other jurisdictions interpreting a distinct statute enacted over a decade prior to the NYC Biometrics Law are far from controlling here.

Second, the text of the Illinois BIPA is meaningfully different from the NYC Biometrics Law. The Illinois BIPA makes it unlawful to "sell, lease, trade, or otherwise profit from

---

[41] Dkt 12-1 at 13 (emphasis added).

[42] N.Y.C. Admin. Code § 22-1202(a).

a person's or a customer's biometric identifier or biometric information,"[43] whereas the NYC Biometrics Law at issue here makes it "unlawful to sell, lease, trade, share in exchange for anything of value or otherwise profit from the *transaction* of biometric identifier information."[44] This difference is significant because the NYC Biometrics Law prohibits profiting from a *transaction* of biometric information, not merely from the information itself.

Third, all but one of the cases plaintiff cites are distinguishable[45] because they concern (1) provisions of BIPA that are not analogous to Section 22-1202(b),[46] (2) alleged payments in exchange for access to biometric data,[47] or (3) alleged integration of biometric data into products sold by the defendant.[48] Indeed, one of those cases rejected the argument "that 'otherwise profit'

---

[43]

740 Ill. Comp. Stat. Ann. 14/15(c).

[44]

N.Y.C. Admin. Code § 22-1202(b).

[45]

The only decision that is not readily distinguishable is *In re Clearview AI, Inc., Consumer Priv. Litig.*, No. 21-CV-135, 2022 WL 252702 (N.D. Ill. Jan. 27, 2022), in which the court held that plaintiff had alleged adequately that Macy's had profited from the use of biometric data in violation of BIPA by reducing the number of stolen grounds. *Id.* at *4. The Court respectfully disagrees with that decision for the reasons set forth above.

[46]

*Arnold v. Target Corp.*, No. 24 CV 4452, 2024 WL 4851573, at *2–3 (N.D. Ill. Nov. 21, 2024) (concerning claims under BIPA Sections 15(a), (b), and (d), but not under Section 15(c), which, like Section 22-1202(b), prohibits private entities from selling, leasing, trading, or otherwise profiting from a person's biometric data).

[47]

*Melzer v. Johnson & Johnson Consumer Inc.*, No. CV 22-3149 (MAS) (RLS), 2023 WL 3098633, at *5 (D.N.J. Apr. 26, 2023) (defendant "acknowledged that it may have sold" biometric data); *Mayhall on behalf of D.M. v. Amazon Web Servs. Inc.*, No. C21-1473-TL-MLP, 2022 WL 2718091, at *12 (W.D. Wash. May 24, 2022) (defendants allegedly "shared access to . . . biometric data in exchange for monetary payment for their services"), *report and recommendation adopted*, No. 2:21-CV-01473-TL, 2023 WL 2728292 (W.D. Wash. Mar. 31, 2023).

[48]

*Vance v. Amazon.com Inc.*, 534 F. Supp. 3d 1314, 1324 (W.D. Wash. 2021).

12

means any use of biometric data that generates profits. . . . Plaintiff's reading of ['otherwise profit'] — prohibition of any use of biometric data that brings a benefit — would lead to absurd results that contravene [the Illinois] BIPA itself."[49] So too here. As noted, the NYC Biometrics Law does not prohibit any use of biometric data that brings a benefit.

*The New York Civil Rights Law Claim*

Plaintiff concedes the insufficiency of this cause of action.[50] Accordingly, this claim is dismissed.

*Unjust Enrichment Claim*

Wakefern argues that plaintiff's unjust enrichment claim is preempted by New York State's Civil Rights Law. In *Gross*, the Court adopted in relevant part a report and recommendation, which explained:

> "New York courts have long recognized the Civil Rights Law as 'preempt[ing] all common law claims based on unauthorized use of name, image, or personality, including unjust enrichment claims.' Indeed, '[t]he Civil Rights Law does not simply cover or define common law claims, it provides an exclusive cause of action for cases such as [ones alleging unjust enrichment]. That is to say, there is no cause of action in New York for unjust enrichment arising from alleged unauthorized use of personal image.'
>
> Plaintiffs' unjust enrichment claim is thus preempted by the Civil Rights Law. . . . [F]acial recognition technology, like that at issue here, is a category of biometric technology that analyzes facial features to identify a person. It operates by detecting an individual's face in person or from an image. A facial recognition technology system then generates a unique face print (similar to a fingerprint) by performing an

---

[49] *Id.* at 1321–33.

[50] Dkt 12 at 3 n.3.

13

analysis of facial geometry and other features of the face.  Plaintiffs can thus hardly claim that their biometric data is unlike an image or likeness of them such that it would be immune from preemption."[51]

So too here.  Plaintiff's unjust enrichment claim is preempted by the Civil Rights Law.  Plaintiff's only argument to the contrary is that she has conceded her Civil Rights Law claim.  But whether or not plaintiff chooses to bring such a claim does not affect the preemptive scope of the Civil Rights Law.  Accordingly, plaintiff's unjust enrichment claim is dismissed.[52]

### *Conclusion*

For the foregoing reasons, Wakefern's motion to dismiss (Dkt 9) is granted.  This ruling is without prejudice to a motion, filed no later than December 15, 2025, for leave to amend the complaint.  Any such motion must include (1) a clean copy of the proposed amended complaint,

---

[51] *Gross v. Madison Square Garden Ent. Corp.*, No. 23-cv-3380 (LAK)(JLC), 2024 WL 103235, at *9 (S.D.N.Y. Jan. 9, 2024) (internal quotation marks and citations omitted) (quoting *Zoll v. Ruder Finn, Inc.*, No. 01-CV-139 (CSH), 2004 WL 42260, at *4 (S.D.N.Y. Jan. 7, 2004)), *report and recommendation adopted in relevant part*, 2024 WL 2055343 (S.D.N.Y. May 7, 2024).

[52] Wakefern argues that this claim should be dismissed on several other grounds.  In light of the disposition of the motion, the Court need not reach these alternate grounds for dismissal.

(2) a redlined version of the proposed amended complaint showing all changes from the complaint, and (3) a memorandum addressing why the amendments would not be futile.

SO ORDERED.

Dated:        December 1, 2025

Lewis A. Kaplan
United States District Judge